UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Milwaukee Mutual Insurance Company,           Civil No. 12-2067 (PAM/TNL)
n/k/a Milwaukee Insurance Company,

                           Plaintiff,

v.                                                  **MEMORANDUM AND ORDER**

Centex Real Estate Corporation, Centex
Homes, Valley Waterproofing, Inc, and
The Lafayette Park Homeowners
Association, Inc.,

                          Defendants.

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

This is an insurance coverage dispute between Plaintiff Milwaukee Insurance Company and its Additional Insureds Defendants Centex Real Estate Corporation and Centex Homes. Milwaukee denies that it has a duty to defend and indemnify Centex in an underlying suit in Dakota County involving construction damage to Lafayette Park, a condominium complex in Inver Grove Heights.

**A.**      **The Policy**

Milwaukee insured Valley Waterproofing, Inc. under a one-year Commercial Package Policy, effective from November 26, 2001, to November 26, 2002. (St. Peter Aff. Ex. 5

(Docket No. 21-1) (Policy No. CPP30777590282).) The Policy covers property damage "to which this insurance applies" and imposes a duty to defend against "any 'suit' seeking those damages." (Id. at MIL 0019 ¶ 1(a).) Milwaukee has no duty to defend against "any 'suit' seeking damages for . . . 'property damage' to which [the Policy] does not apply." (Id.) The Policy covers "property damage" only if:

(1) "The . . . 'property damage' is caused by an "occurrence that takes place in the coverage territory; [and]

(2) The . . . 'property damage' occurs during the policy period";

(Id. ¶¶ 1(b)(1)-(2).) "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at MIL 0029 ¶ 12.)

"Property damage" is defined as:

a. "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

(Id. ¶ 15.)

**B. Underlying Action**

In April 2012, the Lafayette Park Homeowners Association sued Centex and other unnamed contractors, alleging negligence and breach of warranty relating to the design and construction of Lafayette Park. Lafayette claims that Centex and its contractors caused various defective conditions including, but not limited to "the installation of concrete stoops and foundation components which have heaved, and . . . potential water damage to framing

and other components which may be revealed by further investigation, both of which have or may cause subsequent damage to load bearing portions of the dwellings." (St. Peter Aff. Ex. 1 (Docket No. 21-1) ¶ 4.4 (Dakota County Compl.).) Lafayette seeks the cost of repairs, cost to repair defective conditions, compensation for the loss of use of the units, compensation for loss of marketability, and other similar losses. (Id. ¶¶ 3.8, 4.7.) The case is ongoing.

Milwaukee is now involved because its insured, Valley Waterproofing, is alleged to have installed the drain tile at Lafayette, and thus to be at least partially responsible for the damage. Valley Waterproofing and Centex worked together on numerous construction projects and Centex is listed as an Additional Insured under Valley Waterproofing's Policy. (Policy at MIL 0013-14.) The Policy states that coverage for Centex is limited to "liability arising out of [Valley Waterproofing's] operations." (Id.) In other words, Centex is not insured under the Policy for the condominium project as a whole, but only as to Valley Waterproofing's work as Centex's subcontractor. It is undisputed that Valley Waterproofing's drain tile work is among the work at issue in the underlying complaint. It is unclear, however, when Valley Waterproofing performed that work.

Milwaukee filed the instant Complaint seeking a declaration that it has no duty to defend or indemnify Centex for the damage to Lafayette. Milwaukee now seeks summary judgment on the grounds that (1) the underlying complaint does not seek damages; (2) there are no allegations of "property damage" or "occurrence" as those terms are defined by the Policy; and (3) there are no allegations of "property damage" during the policy period.

Milwaukee specifically requests a declaration that it has no duty to defend or indemnify Centex in the underlying action.[1]

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

---

[1] Milwaukee also named Valley Waterproofing and Lafayette Park Homeowners Association as defendants. Valley Waterproofing has not made an appearance, and Milwaukee dismissed the Homeowners Association on the condition that the Homeowners Association would be bound by the Court's determination. (Docket No. 10.)

Under Minnesota law, in determining whether an insurer has a duty to defend, ambiguity as to coverage is resolved in favor of the insured. Bituminous Cas. Corp. v. Bartlett, 240 N.W.2d 310, 312 (Minn. 1976), overruled in part on other grounds by Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn. 1979). If "any part of the claim is 'arguably' within the scope of the policy's coverage," the insurer has a duty to defend, and "an insurer who wishes to escape that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165-66 (Minn. 1986).

To determine whether the insurer has a duty to defend, the Court compares the allegations in the underlying complaint with the relevant language in the Policy. Pac. Ins. Co. v. Burnet Title, Inc., 380 F.3d 1061, 1064 (8th Cir. 2004) (citing Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 256 (Minn. 1993)). However, "the words of the complaint need not precisely match the words of the policy, they must simply put the insurance company on notice of a claim within the policy coverage." Franklin v. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407 (Minn. 1998) (citing Garvis, 497 N.W.2d at 258); see also Imaging Alliance Grp., LLC v. Am. Econ. Ins. Co., No. 05-384, 2006 WL 145428, *3 (D. Minn. Jan. 19, 2006) (Magnuson, J.) (same).

**A.	Damages**

Milwaukee first argues that it is not obligated to defend Centex because Lafayette is not seeking "damages because of . . . 'property damage.'" (Policy at MIL 0019 ¶ 1(a).) Milwaukee contends that Lafayette seeks recovery based on economic loss, i.e., sub-par work allegedly performed by Centex and others,[2] rather than for damages flowing from the work. But, as Centex notes, the underlying complaint seeks costs not only associated with repairing construction defects, but also with repairing collateral damage to the property including, for example, concrete which has heaved. (Dakota County Compl. ¶ 4.4.) Lafayette therefore has sufficiently alleged damages as defined by the Policy.

**B.	"Property Damage" or "Occurrence"**

Milwaukee next argues that is has no obligation to defend because the underlying complaint does not allege "property damage" or an "occurrence" within the meaning of the Policy. The Court disagrees. Although somewhat vague, the underlying complaint does allege "physical injury to tangible property," as required by the Policy. Most notably, Lafayette references "concrete stoops and foundation components which have heaved" and "potential water damage to framing and other components which may be revealed by further investigation, both of which have or may cause subsequent damage to load bearing portions of the dwellings." (Dakota County Compl. ¶ 4.4.) For purposes of this Motion, that

---

[2] The underlying complaint names Doe Affiliates and Contractors, which, the parties agree, includes Valley Waterproofing.

language is sufficient for Centex to survive summary judgment. Further, the alleged negligent construction claim, if proven, qualifies as an "occurrence" within the meaning of the Policy and under the law. See Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., 819 N.W.2d 602, 611 (Minn. 2012) (holding that negligent construction can be deemed an "occurrence" under policy language identical to that in this case); (see also Policy at MIL 0029 ¶ 12).

**C.     "Property Damage" During the Policy Period**

Milwaukee lastly contends that it should be awarded summary judgment because the underlying complaint does not allege, and there is no evidence that, property damage occurred during the policy period. The Court agrees.

Minnesota courts apply the "actual injury" or "injury-in-fact" rule when determining whether damage occurred within the policy period. Under this rule, coverage is triggered when the damage actually occurs, rather than when the wrongful act occurred. Singsaas v. Diederich, 238 N.W.2d 878, 880 (Minn. 1976). That means that damage to Lafayette must have occurred during the policy period; it is not enough that the underlying work occurred during the policy period.[3] Needless to say, if the work did not occur within the policy period, Milwaukee has no duty to defend.

---

[3] Only Valley Waterproofing's work is relevant for purposes of this analysis. (See Policy at MIL 0013-14 (coverage for Centex is limited to "liability arising out of [Valley Waterproofing's] operations.").)

Milwaukee is correct that the underlying complaint contains no basis to conclude that the damage occurred during the policy period. The complaint mentions no dates whatsoever. There is no indication as to when the construction occurred, let alone when the damage occurred. Further, there is no reference as to when Valley Waterproofing performed the work, or even that Valley Waterproofing did the work.

The record before the Court is similarly devoid of material information. See Tschimperle v. Aetna Casualty & Sur. Co., 529 N.W.2d 421, 424 (Minn. Ct. App. 1995) (holding that although the duty to defend is generally determined by comparing the allegations in the complaint with the language of the policy, the Court may look beyond the complaint to extrinsic facts to establish the existence or nonexistence of the duty to defend.) After ample opportunity for discovery there is no evidence in the record that Valley Waterproofing performed its work on the condominiums during the policy period. The absence of such evidence is telling and, ultimately, dispositive.

Centex contends that the work "arguably" falls within the policy period because counsel for Centex wrote a letter to Milwaukee stating that "[c]onstruction activities took place from summer of 2002 through summer 2004." (St. Peter Aff. Ex. 6 at 1.) The letter also states that "Valley Waterproofing was the only waterproofing and draintile contractor on the project" but does not indicate when Valley Waterproofing performed that work. (Id.) Therefore, even if it could be deemed evidence, the letter does not support Centex's theory.

In sum, regardless of who carries the burden of proof, neither the underlying complaint nor the record supports a finding that Valley Waterproofing performed the work at issue within the policy period. Under these circumstances, Milwaukee has no duty to defend the underlying action. And because Milwaukee has no duty to defend, it also has no duty to indemnify. See Florists' Mut. Ins. Co. v. Wagners Greenhouses, Inc., 535 F. Supp. 2d 947, 950 (D. Minn. 2008) (Doty, J.) ("[I]f there is no duty to defend under an insurance policy, there is also no duty to indemnify.").

**CONCLUSION**

There are no genuine issues of material fact precluding Plaintiff's Motion for Summary Judgment. Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff Milwaukee Insurance Company's Motion for Summary Judgment (Docket No. 18) is **GRANTED**; and

2. Plaintiff Milwaukee Insurance Company has no duty to defend or indemnify Defendants Centex Real Estate Corporation or Centex Homes in the underlying action.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 13, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge